*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLARENCE KELLY,

        Plaintiff-Appellee,

v

FADI VENTURES, INC., doing business as VON'S MARKET NUMBER 3,

        Defendant-Appellant.

UNPUBLISHED
February 19, 2025
2:16 PM

No. 367216
Wayne Circuit Court
LC No. 22-012667-NO

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

After he was shot outside defendant's liquor store by a man who had been behind the store's counter, plaintiff, Clarence Kelly, sued defendant, Fadi Ventures, Inc., on a negligence claim and a vicarious liability theory. Defendant sought summary disposition under MCR 2.116(C)(10), but the trial court denied relief. Defendant now appeals that order by leave granted.[1] We affirm.

## I. FACTUAL BACKGROUND

On February 16, 2020, plaintiff went to defendant's liquor store. Plaintiff asserted that he had purchased beer at the store and was on his way outside when a man who had been behind the store's counter ran up behind him, choked him, and dragged him out of the store. Plaintiff did not recognize that man, and he had not seen that man in the store before, even though plaintiff went to the store on a daily basis. Plaintiff then opened the door to the store, threatened to sue, and walked away. The same man "ran outside" and shot plaintiff in the leg.

Plaintiff filed a complaint alleging that defendant was negligent in its hiring and training practices, and that it was vicariously liable for the negligence or gross negligence of its "employee and/or agent," i.e., the unidentified man who shot plaintiff. Defendant sought summary disposition

---

[1] *Kelly v Fadi Ventures, Inc*, unpublished order of the Court of Appeals, entered January 2, 2024 (Docket No. 367216).

under MCR 2.116(C)(10), contending that (1) there was no evidence that established the existence of an employment relationship between the assailant and defendant, (2) even if the assailant was an employee of defendant, there was no evidence that defendant knew or should have known that the assailant had a propensity to commit criminal or tortious acts, (3) even if the assailant was an employee of defendant, he acted outside the scope of his employment when he shot plaintiff, and (4) plaintiff's general negligence and gross negligence claims were improperly predicated upon an intentional tort.

In a written order issued on July 18, 2023, the trial court denied defendant's motion. The trial court stated that "[v]iewing the evidence in a light most favorable to the non-movant Plaintiff, there remain genuine issues of material facts for the fact finder to sort out and decide as to the issues raised by Defendant as to direct negligence, vicarious liability and employment status." In response, defendant sought and obtained leave to appeal the trial court's order.

## II. LEGAL ANALYSIS

On appeal, defendant contends that the trial court erred by denying its motion for summary disposition. Defendant asserts that summary disposition was warranted under MCR 2.116(C)(10) because: (1) there was no evidence that plaintiff's assailant was defendant's employee; (2) even if the assailant was defendant's employee, there was no evidence that he was acting within the scope of his employment when he assaulted plaintiff; (3) the trial court did not realize that the gravamen of plaintiff's claim was for an intentional tort, rather than vicarious liability arising from an act of negligence; and (4) defendant had no reason to know of the violent tendency of plaintiff's assailant. We will address each argument in turn.

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *Id*. at 160. Under MCR 2.116(C)(10), summary disposition is justified if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A trial court must draw all reasonable inferences in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). Additionally, a trial court is not entitled to render any findings of fact, so "if the evidence before it is conflicting, summary disposition is improper." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Id*. With these standards in mind, we must consider each of defendant's four arguments in favor of summary disposition.

## A. THE ASSAILANT'S EMPLOYMENT STATUS

Defendant insists that plaintiff failed to show that the assailant was defendant's employee, so the trial court should have awarded defendant summary disposition under MCR 2.116(C)(10). "Generally, Michigan law will impose liability upon a defendant only for his or her own acts of negligence, not the tortious conduct of others." *Laster v Henry Ford Health Sys*, 316 Mich App 726, 734; 892 NW2d 442 (2016). "However, an exception exists under the theory of respondeat

superior, wherein an employer may be liable for the negligent acts of its employee if the employee was acting within the scope of his employment." *Id*. "[I]n the absence of an employer-employee relationship, vicarious liability may also attach through the concept of agency." *Id*. at 735. "In an agency relationship, it is the power or ability of the principal to control the agent that justifies the imposition of vicarious liability." *Id*.

Here, the lower-court record clearly reveals a genuine issue as to the assailant's relationship with defendant, so the trial court correctly denied summary disposition on that issue. To be sure, plaintiff has offered inconsistent descriptions of the man who shot him and the identity of that man is still in question. There is even evidence that plaintiff told the police that his gunshot wound was the result of a stray bullet fired by a nearby man who was arguing with someone else. But plaintiff has furnished evidence that the man who shot him was at defendant's store that night and working behind the counter.[2] At the hospital, plaintiff advised a police officer that he had been shot by one of the store's clerks. He also alleged that he was shot by a store employee in a subsequent affidavit and during his deposition. Additionally, deposition testimony of one of the other clerks at the store that night established that a man named "Steven" was at the store that night and would help if the store was busy. Further, the store's owner testified at a deposition as to some form of employment relationship when he said that "Steven" did not have a set schedule, but "would come as needed when we needed him."

Viewing the evidence in a light most favorable to plaintiff, there is at least a genuine issue whether "Steven" was the assailant and whether he could be considered an employee or agent of defendant, which is a material fact. The fact that plaintiff has, at times, struggled to identify the assailant in photographic lineups does not change the fact that there is evidence that the man who shot plaintiff was the person plaintiff saw behind the store's counter on the night of the shooting. Thus, the trial court did not err by denying summary disposition to defendant because there was a genuine issue regarding the assailant's employment relationship with defendant.

## B. ACTING IN THE SCOPE OF EMPLOYMENT

Defendant next argues that, even if plaintiff's assailant was defendant's employee, he was acting outside the scope of his employment when he assaulted and shot plaintiff. Defendant insists that this is fatal to plaintiff's vicarious liability theory, so the trial court erred by denying summary disposition. "Broadly, and in relevant part, an employer may be held liable for the tortious conduct of its employee so long as that conduct was committed in the course and within the scope of the employee's employment, but *not* if the act was outside the employee's authority or committed for the employee's own personal purposes." *Mueller v Brannigan Bros Restaurants and Taverns, LLC*, 323 Mich App 566, 572; 918 NW2d 545 (2018) (quotation marks and citation omitted). Our Supreme Court defined " 'within the scope of employment' to mean 'engaged in the service of his master, or while about his master's business.' " *Hamed v Wayne Co*, 490 Mich 1, 11; 803 NW2d

---

[2] The record reveals that three people were working at the store on the night that plaintiff was shot: (1) William Al Kebbeh; (2) Zuhair Yousif; and (3) a man known as "Steven." A video taken by a police body camera on the night of the shooting depicts "Steven" behind the store's cash register. Astonishingly, defendant could not produce records of the people working that night even though the store kept records because "[e]very week we dump them in the garbage."

237 (2011) (citation omitted). "Independent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment." *Id*. But even if "an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business." *Id*. "While the issue of whether the employee was acting within the scope of his employment is generally for the trier of fact, the issue may be decided as a matter of law where it is clear that the employee was acting to accomplish some purpose of his own." *Mueller*, 323 Mich App at 572 (quotation marks and citation omitted).

There is scant evidence in the record about the reason for the attack plaintiff suffered. On the existing record, there is little evidence about the assailant's identity, his role at the store, or the authority that role entailed. Defendant contends that, assuming that the assailant was its employee, "his job duties can be considered common knowledge and include ringing up customers, cleaning the store/establishment, and stocking shelves," and "do not include touching or becoming physical with customers." But by citing common knowledge as the basis for that defense, defendant tacitly acknowledges there is nothing in the lower-court record establishing the job duties of the assailant. Even the assumption on which defendant's argument is based—that the assailant had a clerk's job and had no authority to act as security for the store—is tenuous, especially in light of the evidence establishing that "Steven" always carried a gun in view of store customers. On the existing record, we cannot decide that it is "clear that the employee was acting to accomplish some purpose of his own," see *id*., when he shot plaintiff. Accordingly, the issue must be left to the trier of fact, so the trial court did not err by determining that a genuine issue existed regarding that material fact.

## C. INTENTIONAL TORT

Defendant contends that the gravamen of plaintiff's claim is an intentional tort, rather than negligence, so plaintiff's claim of vicarious liability is barred. Defendant asserts that the trial court should have rejected plaintiff's theory of vicarious liability because plaintiff's underlying claim is an intentional tort i.e., assault and battery, not negligence or gross negligence.[3] Plaintiff does not dispute that his vicarious liability theory is predicated on an intentional act of the assailant, and he acknowledges that he "seeks to hold defendant vicariously liable for an intentional tort committed by an employee . . . ." Hence, plaintiff's claim is best characterized as vicarious liability for the intentional tort of assault and battery, and the propriety of summary disposition turns upon whether defendant can be held vicariously liable for the alleged intentional act of its employee.[4]

"It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Frequently, an employer

---

[3] On appeal, plaintiff states "[i]t is too late to be arguing about pleading technicalities," but plaintiff does not cite authority for that proposition of law. Under MCR 2.116(D)(4), a motion for summary disposition under MCR 2.116(C)(8), (9), or (10), "may be raised at any time, unless a period in which to file dispositive motions is established under a scheduling order pursuant to MCR 2.401."

[4] Plaintiff's labelling of the single count in his complaint as "negligence and/or gross negligence" has been rendered inaccurate by the development of the facts and the law in this case.

is not vicariously liable for the intentional tort of its employee because the conduct falls outside of the scope of the employee's employment. This Court has explained that if an employee "commits a serious crime involving excessive violence, the [trial] court should hold as a matter of law that that employee was not acting within the scope of his employment" unless certain exceptions apply. *Bryant v Brannen*, 180 Mich App 87, 103; 446 NW2d 847 (1989). There, this Court decided that "when the employee is authorized by his employer to carry a weapon," a genuine issue of material fact existed as to whether the employee's violent act fell within the scope of his employment. *Id.* "An act may be within the scope of employment although consciously criminal or tortious." *Id.* at 100 quoting 1 Restatement Agency, 2d § 231, p 512.

The underlying premise of defendant's argument—that defendant cannot be held liable for the intentional action of the assailant—is flawed. The fact that an employee commits an intentional tort is not dispositive of the employer's vicarious liability. Here, there was evidence that "Steven" openly carried a gun when he worked at defendant's store. A genuine issue remains as to whether that was authorized by defendant. Additionally, as we have explained, there is a genuine issue of fact about "Steven" and the scope of his employment. Therefore, the fact that plaintiff's claim is predicated on intentional conduct does not necessarily preclude vicarious liability. Hence, the trial court did not err when it denied summary disposition to defendant on that basis.[5]

### D. ASSAILANT'S VIOLENT PROPENSITIES

Finally, defendant maintains that plaintiff failed to establish that the assailant had violent propensities and that defendant knew or should have known about those propensities when he was hired. Defendant insists that plaintiff's claim should have been dismissed because of that supposed defect. Under the general rule, an employer is not liable for acts of its employees outside the scope of its business. *Hamed*, 490 Mich at 12. But even when an employee's act falls outside the scope of the employer's business, the employer can be vicariously liable "if the employer knew or should have known of the employee's *propensities and criminal record* before that employee committed an intentional tort." *Id.* "This inquiry involves an analysis of whether an employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." *Id.*

As we have already explained, though, there is a genuine issue of material fact whether the assailant was acting within the scope of his employment when he assaulted plaintiff. Therefore, it is unnecessary to address this issue because it has no bearing on the trial court's denial of summary disposition on plaintiff's theory of vicarious liability. Simply stated, an employer who permits an employee to carry a gun on the job and use that gun when necessary can be held vicariously liable if that employee uses the gun while on the job to harm a customer of defendant's business. In such a scenario, the employer's knowledge of the employee's dangerous propensities has no bearing on

---

[5] Even if we were to disagree with the trial court's denial of summary disposition pursuant to MCR 2.116(C)(10) and decide that plaintiff's negligence and/or gross negligence claim is unsustainable, plaintiff would nonetheless be entitled to amend his complaint under MCR 2.116(I)(5) to set forth the perfectly viable claim of vicarious liability for the intentional tort of assault and battery.

the employer's vicarious liability. Thus, the trial court did not err in denying summary disposition to defendant on that basis.

Affirmed.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood